UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PATRICIA A. MORDIS, | ) | Case No. 06-42590-293 |
| | ) | Chapter 7 |
| | ) | Motion No. 19 |
| Debtor. | ) | (Publish) |

## MEMORANDUM OPINION

This case is before the Court on the motion of the United States Trustee (the "UST") to dismiss Debtor's Chapter 7 case. The UST argues that granting Debtor relief would constitute an abuse of the provisions of Chapter 7 of the Code as provided in 11 U.S.C. §707(b)(1). The Court will grant the UST's motion because it has established that a presumption of abuse exists as provided in 11 U.S.C. §707(b)(2)(A)(i), and Debtor has failed to rebut that presumption.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§1334, 151, and 157 and Local Rule 9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. §1409(a).

**FINDINGS OF FACT**

The facts are not in dispute. Debtor filed her petition for relief under Chapter 7 of the Code on June 15, 2006. Debtor's monthly income for purposes of §707(b)(1) is $5,489.98, which yields an annualized income of $65,879.75. The median income for a family of one in the state of Missouri was $36,696.00 as of the petition date. Debtor also listed her total unsecured debt at $34,714.00.

Debtor listed her current monthly expenses as of the petition date for purposes of §707(b)(1) as $5,390.80 on her Form B22A. These expenses included the repayment of two loans that Debtor had taken from her Thrift Savings Plan ("TSP") account with her employer, the United States Postal Service. The monthly payments on the two loan repayments totaled $520.00 (collectively the "Loan Repayment"). Debtor also included $181.48 per month in voluntary contributions to her TSP account (the "Voluntary Contribution") in her expenses. Neither the Loan Repayment nor the Voluntary Contribution is a condition of Debtor's continued employment.

The UST reviewed Debtor's Form B22A to determine whether the presumption of abuse arose under 11 U.S.C. §707(b)(2)(A)(i). The UST found that both the Loan Repayment of $520.00 per month and the Voluntary Contribution of $181.48 per month were not expenses that Debtor could use to reduce her monthly income under §707(b)(2)(A)(ii), (iii), or (iv). Thus, when excluding these two items from Debtor's

monthly expenses, the UST determined that Debtor's monthly income multiplied by 60 was greater than both 25% of her unsecured debts and $10,000.00. The UST, therefore, filed a timely Statement of Presumed Abuse on September 14, 2006 and the instant motion to dismiss on October 13, 2006.

The Court agrees with the UST that neither the Loan Repayment nor the Voluntary Contribution are expenses that Debtor can utilize to reduce her monthly income for purposes of the means testing analysis of §707(b)(2)(A)(i). Accordingly, the Court will grant the UST's motion.

## **CONCLUSIONS OF LAW**

*A. Introduction*

Section 102 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the so-called means testing provision to §707(b)(1)(A) of the Code. Under the means testing provision of BAPCPA, a rebuttable presumption arises that granting the debtor relief under Chapter 7 would be an abuse of the provision of that Chapter if "the debtor's current monthly income, reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (1) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000 whichever is greater; or $10,000." 11 U.S.C. §707(b)(2)(A)(i).

Once the presumption of abuse arises, the debtor may rebut the presumption by

demonstrating "special circumstances". 11 U.S.C. §707(b)(2)(B)(i). BAPCPA requires the debtor to submit, under oath, documentation that establishes the special circumstances and why those expenses are necessary and reasonable. §707(b)(2)(B)(ii) & (iii).

Here, the UST determined that neither the Loan Repayment nor the Voluntary Contribution fit into the categories outlined in (ii), (iii), or (iv) of §707(b)(2)(A) so that neither expense could be included in the means testing analysis of §707(b)(2)(A)(i). After deducting the $520.00 Loan Repayment and the $181.48 Voluntary Contribution from Debtor's monthly expenses, and including those amounts in Debtor's income, the UST determined that Debtor's monthly income multiplied by 60 was greater than both 25% of her scheduled unsecured non-priority debt and $10,000.00, so that the presumption of abuse arose under §707(b)(2)(A)(i).

Debtor argues that the both the Loan Repayment and the Voluntary Contribution are expenses that the Court should exclude from the means testing analysis for three reasons. Debtor first contends that the Loan Repayment is a mandatory employment expenses under §707(b)(2)(A)(ii). Debtor further states that her obligation to make the Loan Repayment is a secured debt under §707(b)(2)(A)(iii). Debtor finally maintains that both Loan Repayment and Voluntary Contribution must be excluded from her income for purposes of the means test contained in

§707(b)(2)(A)(i) because she would be able to exclude those expenses from her disposable income in a hypothetical Chapter 13 plan under §1322(f).

The Court rejects Debtor's arguments for the following reasons.

*B. The Loan Repayment is not a type of expense listed in §707(b)(2)(B)(ii).*

Debtor initially contends that the Loan Repayment is the type of expense specified in §707(b)(2)(A)(ii). Relevant to the issues in dispute here, §707(b)(2)(A)(ii) states that for purposes of the means testing analysis, the debtor may deduct from her income any expense "specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief..."

Debtor premises her argument that the Loan Repayment is a type of expense listed in §707(b)(2)(A)(ii) on her contention that it is an involuntary deduction from her wages. The statute, however, explicitly recites that only the expenses listed by the IRS as "Other Necessary Expenses" are the type of expenses Debtor can exclude from her income in the means test analysis. And the IRS's Internal Revenue Manual (the "IRM") recites that a person may deduct an "involuntary deduction" from her wages only if the deduction is a condition of the person's employment. IRM §5.15.1.10. The IRM lists examples of such deductions as union dues and uniforms. *Id*.

-5-

The undisputed fact here is that the Loan Repayment is not a condition of Debtor's continued employment. Thus, while Debtor may face adverse tax consequences if she fails to make the Loan Repayment, it is not an "involuntary deduction" under the IRM and is, therefore, not a type of expense specified in §707(b)(2)(A)(ii). *In re Braza*, 346 B.R. 724, 730 (Bankr. N.D. Tex. 2006); *In re Lenton*, 358 B.R. 651, 657 (Bankr. E.D. Pa. 2006).

*C. The obligation to make the Loan Repayment is not a secured debt under §707(b)(2)(A)(iii).*

Debtor's second argument as to why the Loan Repayment should be excluded from her income under the means testing analysis is that her obligation to repay it is a secured debt under §707(b)(2)(A)(iii). Section 707(b)(2)(A)(iii) states that a debtor may exclude from her income the "the debtor's average monthly payment on account of secured debts."

Debtor cites to *In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006) in support of her argument that her obligation to make the Loan Repayment is a secured debt under §707(b)(2)(A)(iii). Although *Thompson* did hold that a debtor's obligation to repay a loan from her 401(k) account was a "secured debt", that opinion was reversed on appeal by the district court. *In re Thompson*, 370 B.R. 762 (N.D. Ohio 2007). The District Court held in *Thompson* that because a debtor's obligation to repay a loan against her 401(k) account is not a debt under the Code, such an

-6-

obligation cannot be a secured debt under §707(b)(2)(A)(iii). *Id*. at 770. The Court agrees with the District Court's rationale.

The Code defines a debt as a "liability on a claim." 11 U.S.C. §101(12). The Code in turn defines a claim as a "right to payment." 11 U.S.C. §101(5). Thus, the terms debt and claim are coextensive under the Code. *Johnson v. Home State Bank*, 510 U.S. 78, 84-85 n.5 (1991).

Generally, when a person defaults on a loan taken from a qualified retirement plan, the plan administrator can simply offset the unpaid balance of the loan from the person's account. Thus, the plan administrator does not have a "right to payment" from the account holder if he defaults on the loan . Accordingly, the vast majority of courts that have addressed the issue have held that a debtor's obligation to repay a loan from a qualified retirement plan is not a "debt" under the Code. *See e.g. Mullen v. United States (In re Mullen)*, 696 F.2d 470, 472 (6th Cir. 1983); *In re Villarie*, 648 F.2d 801, 811 (2d Cir. 1981); *Thompson*, 370 B.R. at 769-70; *In re Otero*, 371 B.R. 190, 196-97 (Bankr. W.D. Tex. 2007); *In re Jones*, 335 B.R. 203, 210 (Bankr. N.D. Fla. 2005); *In re Esquivel*, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999); *In re Scott*, 142 B.R. 126, 131-32 (Bankr. E.D. Va. 1992).

The Court finds that there is strong evidence that Congress intended to preserve this interpretation when it enacted BAPCPA. As the Supreme Court has noted,

Congress does not amend the Code on a "clean slate". *Dewsnup v. Timm*, 502 U.S. 773, 779 (1992). Rather, courts should presume that Congress is aware and understands past judicial interpretation and practice when it amends the Code. *Id*.

Concerning the issue of whether a debtor's obligation to repay a loan taken from a qualified retirement account is a debt under the Code, Congress added 11 U.S.C. §362(a)(19) to the Code when it enacted BAPCPA. This section provides that the automatic stay does not apply to any automatic withdrawal from Debtor's wages to repay a loan from a qualified retirement account, including the TSP account at issue here. Congress, however, also included language in §362(a)(19) that states that nothing in the section should be construed as creating a claim or debt under the Code with respect to a repayment of a loan from a qualified retirement account.

In sum, the overwhelming majority of pre-BAPCPA opinions held that a debtor's obligation to remit payment on a loan taken from a qualified retirement account was not a claim or debt under the Code. The Court must assume that Congress was aware of this judicial interpretation when it enacted BAPCPA and intended to preserve it when it added §362(a)(19) to the Code. Therefore, because Debtor's obligation to remit the Loan Repayment is not a debt under the Code, it

cannot be a secured debt under §707(b)(2)(A)(iii).[1] *Thompson*, 370 B.R. at 770-71; *Otero*, 371 B.R. at 199.

*D.  The fact that Debtor may exclude the Loan Repayment and the Voluntary Contribution from a Chapter 13 plan is not relevant to the means testing analysis.*

Debtor finally contends that because she may exclude from her disposable income both the Loan Repayment and Voluntary Contribution in a hypothetical Chapter 13 plan, those expenses should not be included in the means testing analysis under §707(b)(2)(A)(i).  A cardinal rule of statutory construction is when Congress includes particular language in one section of a statute but omits it in another section of the same Act, courts should presume that Congress acted intentionally in that exclusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004).

Here, Congress, in enacting BAPCPA, did not include any provisions from Chapter 13 in the means testing provisions contained in § 707(b)(2)(A).  Thus, the Court must assume that Congress intentionally gave a Chapter 13 debtor the ability

---

[1]  The District Court in *Thompson* also held that even if the debtor's obligation to repay the 401(k) loan was a "debt" it was not a secured debt for purposes of the Code. *Thompson*, 370 B.R. at 770.  The Court is somewhat dubious of this conclusion given that under §506(a)(1), the plan administrator's right of setoff would be a secured claim if the plan administrator had a claim in the first place. *See* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005*, 15 AM. BANKR. INST. L. REV. 223, 285-86 (2007).

to exclude the repayment of a loan from her 401(k) plan, but disallow a Chapter 7 debtor the same ability under the means testing provisions of §707(b)(2)(A)(i). *Thompson*, 370 B.R. at 771; *Lenton*, 358 B.R. at 660; *Braza*, 346 B.R. at 731-32.

It does seem incongruous at first glance to allow a Chapter 13 debtor to exclude a 401(k) loan repayment from disposable income while not allowing a Chapter 7 debtor to exclude that same payment as an expense under the means test. Such a result, however, is consistent with two of the primary policy objectives of BAPCPA, protecting retirement contributions and ensuring debtors repay creditors the maximum they can afford. *See Lenton*, 358 B.R. at 660-61 (*citing* 2005 U.S.C.C.A.N. 88, 89 (2005)).

Section 1325(b)(1)(B) requires a Chapter 13 debtor to devote all of her disposable income over a three to five year period to paying her creditors. It is certainly possible that the debtor may pay the balance of a loan taken from her retirement account during that period, and the trustee would then have the ability to redirect the newly available funds to the creditors. Thus, the provisions governing Chapter 13 protects a debtor's ability to repay a loan from her retirement account while at the same time requiring the debtor to devote the amount of that payment to her creditors if she pays the loan during the Chapter 13 commitment period. Accordingly, requiring a debtor with a substantial obligation to repay a loan from her

401(k) account to proceed under Chapter 13 as opposed to Chapter 7 is certainly consistent with the stated Congressional policy objectives underlying BAPCPA. *See Thompson*, 370 B.R. at 772; *Lenton*, 358 B.R. at 660-61.

## CONCLUSION

Debtor's obligation to make the Loan Repayment of $520.00 per month and the Voluntary Contribution of $181.48 per month are not the kind of expenses contained in §§707(b)(2)(A)(ii), (iii), or (iv). Thus, these expenses may not be excluded from Debtor's income under the means test contained in §707(b)(2)(A)(i). Also, it is undisputed that Debtor has sufficient income to both repay more than 25% of her non-priority unsecured debt, and more than $10,000.00 if the Loan Repayment and the Voluntary Contribution are not excluded from Debtor's income. The Court finds, therefore, that the UST has established that granting Debtor relief would be presumptively abusive under §707(b)(2)(A)(i).

Debtor did not provide the necessary documentation mandated by §707(b)(2)(B)(ii) to establish that either the Loan Repayment or the Voluntary Contribution was a "special circumstance" to rebut the presumption of abuse. The Court, therefore, will grant the UST's motion to dismiss for substantial abuse under §707(b)(1).

An Order consistent with this Memorandum Opinion will be entered this date.

DATED: October 9, 2007  
St. Louis, Missouri  
JBB

David P. McDonald  
United States Bankruptcy Judge

Copy mailed to:

Patricia A. Mordis  
P.O. Box 771901  
Saint Louis, MO 63177

Douglas Anthony Walker  
Macey & Aleman  
515 Olive Street, Ste 702  
St. Louis, MO 63101

David A. Sosne  
Summers, Compton, Wells & Hamburg, P.C.  
8909 Ladue Rd.  
St. Louis, MO 63124

Peter Lumaghi  
Office of U.S. Trustee  
111 S. 10th St., Ste. 6353  
St. Louis, MO 63102